**WALTON v. SIEMS et ux.**

No. 1483.

Court of Civil Appeals of Texas. Waco.

April 26, 1934.

Rehearing Denied May 24, 1934.

P. M. Rice and A. R. Eidson, both of Hamilton, for appellant.

Allen & Allen, of Hamilton, for appellees.

GALLAGHER, Chief Justice.

Appellant and appellees are adjoining landowners. As a matter of convenience, they will be referred to herein as plaintiff and defendants. Plaintiff, W. T. Walton, sued the defendants, Walter Siems and wife, Clara Siems, for damages alleged to have resulted from the changing of a natural water course extending across the land of both parties, and for an injunction restraining the continuance of such condition. The defendants alleged that plaintiff had constructed a system of ditches, terraces, and levies on his farm, which caused the surface water thereon to converge at one point and there flow onto and over their lands, resulting, by reason of such concentration, in great damage to them. They further alleged that, to protect themselves from such injury, they dug a ditch from the point where such concentrated flow of water entered upon their land, to carry such water northward past their cultivated lands and to discharge the same upon their pasture lands, where less damage would be inflicted thereby, that said ditch was located along the dividing line between them and plaintiff, but wholly on their own land, and that the digging of the same was made necessary by the wrongful acts of the plaintiff as aforesaid. They further alleged that plaintiff could have avoided any injury from the flow of water down said ditch at small and insignificant cost. They also asked for an injunction restraining plaintiff from permitting the water so concentrated to flow upon their land. Plaintiff alleged in reply that the damage sued for by him resulted from the overflow upon his lands of water from the ditch constructed by defendants.

Testimony was introduced tending to show that plaintiff's land was higher than defendants' land; that the natural flow of surface water was diagonally from plaintiff's land onto the land of the defendants; that plaintiff had terraced his land and constructed certain ditches thereon; that the effect thereof was to concentrate surface water flowing on his land and cause the same to flow in a volume upon the land of defendants

about midway of the dividing line between the two tracts; that defendants thereupon dug a ditch on their own land along said line, erected a dam at the head thereof, and thereby effectively diverted the water so entering their land into such ditch and through the same, past their cultivated land onto their pasture land, from which point it flowed across their pasture and into a natural water course. There was testimony tending to show that on some occasions such ditch overflowed and water therefrom ran over the line and onto the land of plaintiff. The statement of facts is voluminous, and the maps shown to have been used to elucidate the testimony on the trial are not contained in such statement. In the absence of such maps, much of the testimony is practically unintelligible. A critical analysis of the testimony is, however, deemed unnecessary.

The case was submitted on special issues, in response to which the jury found, in substance, that:

(1) Defendants diverted the flow of water from its natural course.

(2) After such water was diverted, it overflowed and ran on the land of plaintiff.

(3) Plaintiff's land was damaged by such diverted water in the sum of $10.

Defendants requested special issues, which were answered by the jury. Said answers, so far as material in this appeal, were, in substance, as follows:

(a) Plaintiff, by a system of ditches and terraces, diverted water from his land to the land of defendants with increased volume and force so that it was necessary for defendants to protect their land by the construction of a ditch thereon.

(b) The water so diverted onto the land of defendants and caused by them to flow in said ditch was surface water.

(c) Plaintiff could have avoided injury therefrom by taking reasonable action to prevent the same.

The court received the verdict, and, after reciting the findings in favor of the respective parties, held, in effect, that the findings in favor of defendants precluded a recovery by plaintiff of the damages in the sum of $10 assessed in his favor, and rendered judgment that plaintiff take nothing against the defendants and that the injunctive relief prayed for by him be denied; that the defendants take nothing by their cross-action against the plaintiff and that the injunctive relief prayed for by them be denied.

## Opinion.

Plaintiff's first contention is that the court erred in not rendering judgment in his favor against the defendants for the sum of $10 on findings (1), (2), and (3) made by the jury as aforesaid. He also contends in that connection that the court erred in failing to enjoin defendants from further diversion of such water. Plaintiff, in presenting such contentions, recites, but does not discuss, findings (a), (b), and (c) made by the jury as above recited in response to issues submitted at the request of the defendants. In considering the force and effect of the findings in favor of the plaintiff, we must keep in mind that the jury found that the water involved herein was surface water, and did not find that a depression, which plaintiff contended extended from his land across the land of defendants, was a natural water course. The rule announced in Johnson v. McMahan, 118 Tex. 633, 15 S.W.(2d) 1023, cited by plaintiff, cannot therefore be applied in this case. While lowland is, under existing law, charged with servitude to receive from higher land adjoining surface water according to its natural flow, it is not subject to such servitude when the natural flow has been changed, diverted, and concentrated. The owner of the servient land has a right to repel diverted and concentrated water and by proper construction prevent it from entering upon or flowing over his land, notwithstanding his land is subject to servitude to receive such water in its natural or diffused flow. Bunch v. Thomas, 121 Tex. 225, 49 S.W.(2d) 421; Higgins v. Spear, 118 Tex. 310, 15 S.W.(2d) 1010. The jury not only found that the water involved herein was surface water, but further found that plaintiff had diverted and concentrated the same and that the ditch dug by defendants was necessary to protect their own land from injury from such diverted and concentrated water. Plaintiff does not in his brief complain of either the form or substance of the issues in response to which findings (a) and (b) as aforesaid were returned by the jury. Neither does he contend that such findings are without support in the evidence. Absent some specific complaint, we consider it sufficient to say that said findings, supplemented by such further findings as the trial court must be deemed, in support of the judgment rendered, to have made from the evidence, were sufficient to preclude a judgment in favor of plaintiff on the findings in his favor as aforesaid. Since the judgment of the trial

court will be reversed and the cause remanded on the issue next considered, we will not further discuss the testimony.

■■ Plaintiff further contends that the court erred in overruling his motion to set aside the verdict on the ground that the jury were improperly influenced by the defendants' request that they be allowed to visit and view the premises. Plaintiff's bill of exceptions shows that, just before the court read the charge to the jury, one of defendants' attorneys, in open court and in the presence of the jury, "moved the court to permit the jury trying this case to go out there, view the premises, view plaintiff's land and view the defendants' land"; that plaintiff's counsel excepted to such statement and action; that the trial judge said, "That cannot be done unless the other side agrees"; that plaintiff's attorney excepted to such statement; that defendants' attorney, addressing plaintiff's attorney, said, "You do not agree to it?" and that plaintiff's attorney replied, "We except to that statement." All of the jurors were examined upon the hearing of said motion to set aside the verdict. They all testified that the refusal of plaintiff's attorney to let them visit and view the premises was referred to and discussed in the jury room. Several of them testified that they thought they ought to have been allowed to visit and view the premises, that they could have formed a better idea of the situation by doing so, and that plaintiff's attorney objected because he thought such inspection of the premises would injure his case. All the jurors testified that their verdict was not influenced by the incident. The testimony in the case was voluminous and conflicting. The result of such incident was, according to the testimony of several of the jurors, to create in their mind an impression that an inspection would have been unfavorable to plaintiff and that his attorney purposely withheld from them the additional light which, in their opinion, such an inspection would have afforded them in passing upon the case. The Commission of Appeals, in the case of Woodrum Truck Lines v. Bailey, 57 S.W.(2d) 92, 93, pars. 4 to 7, inclusive, considered the identical question here involved. In that case the attorney for the defendant truck lines, at the close of the testimony, in open court and in the presence of the jury, requested the court to permit the jury to go to the place of the accident and there view the surroundings. Bailey's attorney objected to the granting of such request, and the court denied the same. The Commission of Appeals held that the action of the attorney for the truck lines as above recited was reasonably calculated to prejudice the rights of the plaintiff Bailey in the case and constituted reversible error, and expressly approved a like holding by the Court of Civil Appeals theretofore made in the case. We are not unmindful of the fact that each of the jurors in this case testified that he was not influenced in returning his verdict by the incident under consideration. While according each juror sincerity in so stating, we must also take into consideration the fact that several of them frankly admitted that the effect of the incident upon their minds was to discredit plaintiff's case and to reflect on the sincerity of his counsel. The law recognizes that mental reaction under such circumstances is uncertain, and makes the final test of injury not the conclusion of the jurors as to the effect upon their respective minds, but instead the existence of a reasonable doubt whether the verdict returned was affected to complainant's prejudice. Gulf, C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 276 S. W. 895, 896, 898; Id. (Tex. Com. App.) 278 S. W. 839; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, 107, pars. 3 and 4; City of Waco v. Rast (Tex. Civ. App.) 2 S.W.(2d) 563, 565, pars. 2 to 5, inclusive, and authorities there cited; Letsinger v. Panhandle & S. F. Ry. Co. (Tex. Civ. App.) 286 S. W. 1107, 1110, pars. 3 and 4; Texas & P. Ry. Co. v. Van Zandt (Tex. Com. App.) 44 S.W.(2d) 950, par. 1; Carson v. Texas Pipe Line Co. (Tex. Civ. App.) 59 S.W.(2d) 328, 332, pars. 1, 2 and 3; Bradshaw v. Abrams (Tex. Com. App.) 24 S.W. (2d) 372, 374, pars. 2 and 3; International-Great Northern R. Co. v. Cooper (Tex. Com. App.) 1 S.W.(2d) 578, 579, pars. 1 and 2; Wheat v. Lancaster (Tex. Civ. App.) 284 S. W. 629, 631, pars. 1 to 3, inclusive. We think there is a reasonable doubt whether the verdict returned by the jury in this case was affected by the incident under consideration to plaintiff's prejudice, and that the court erred in overruling his motion to set the same aside.

The judgment of the trial court is reversed, and the cause is remanded.